We'll hear argument first this morning in Case 09-893, AT&T Mobility v. Concepcion. Mr. Pincus. Thank you, Mr. Chief Justice, and may it please the Court. The Ninth Circuit concluded in this case that a state law may mandate the use of a particular procedure in arbitration as long as the law also requires the use of that same procedure in litigation. That interpretation of Section 2 of the Federal Arbitration Act would permit a state to oppose in arbitration any procedure employed in court and thereby require arbitration to be a carbon copy of litigation, precisely what the Act was designed to prevent. Section 2 of the Federal Arbitration Act provides that an arbitration agreement may be held unenforceable under state law only if the state law rule being invoked to invalidate the agreement qualifies as a ground that exists in law or equity for the revocation of any contract. Respondent argues that because California's Discover Bank rule does not facially discriminate against arbitration, it falls within the Savings Clause. But the plain language of the Savings Clause makes clear that it's not limited to statutes that discriminate facially against arbitration. By referring to any contract, it makes clear that, as this Court has said, the rule must be applicable to contracts generally. Scalia. What if a State finds it unconscionable to have an arbitration clause in an adhesion contract, which requires the arbitration to be held at a great distance from where the other party is, and requires that party to pay the costs of the arbitration? Can a State not find that to be unconscionable? It can, Your Honor. And, and we Well, that wouldn't apply to other, to other contracts. But the legal doctrine that the State is applying there, as States have and as we discuss in our brief, is a doctrine that applies a general principle of unconscionability with principles elucidating how it applies. Are we going to sit in judgment? Are we going to sit in judgment? I know you say, you say it has to shock the conscience. But if a State wants to apply a lesser standard of unconscionability, can we strike that down? If it wants to apply a lesser standard to arbitration clauses, yes, absolutely you can, because that would, that would violate what is at the core of the provision, which is discrimination against State law. If a State, if a State enacted a legislature, enacted a statute, and it was headed arbitration, unconscionability rather. And section 1 of that statute had general principles that to be applied to all contractual provisions to determine unconscionability. It must shock the conscience. The question is addressed with respect to the party before the court against whom the contract is going to be applied. And the third principle is unconscionability is decided ex ante. And then section B said, I'm sorry. Sotomayor, what's the difference, then, with the act that you're positing? Sotomayor, what's the difference between a State saying, a State comes in, or I should ask, is there no difference between a State saying these terms in a contract are unconscionable, making the Petitioner always pay the fees, and making him or her arbitrate in a different State, that's unconscionable, or a general rule of State law that says, in a contract of adhesion, the stronger party can't impose undue costs or expenses on the other side to vindicate their rights, whether it's in litigation and or arbitration. In your mind, there's no difference between those two things? Between those two approaches to the issue? I don't think so, Justice Sotomayor. Maybe if I could finish with my example, it may elucidate the distinction that I'm trying to draw. Sotomayor, if you're saying there's no difference between those two things, then how can a State find those terms unconscionable? Under what theory, general theory of law, would they be provisional? I think the critical question is, is the State applying the same principles to arbitration of unconscionability to arbitration agreements as to other agreements. And in my example, I was positing a first provision that laid out three principles that would be applied. If part B of that section, or part 2 of that section, said with respect to arbitration agreements, on the other hand, we are going to require that the procedures be equivalent to what is in court, we are going to look at the time the dispute arises, rather than ex ante, and we're going to look at the effect on everyone, then I think it would be quite clear that that would be discrimination. Scalia, that's bad, absolutely, but that's not what the State's going to do. The State is simply going to say, we find this to be unconscionable. And you say, it's not unconscionable, it's very fair, indeed. But the State says, we think it's unconscionable. Are we going to tell the State of California what it has to consider unconscionable? Respectfully, Justice Scalia, I don't think that's what the State is doing here. I think what the State is doing here is saying, is not saying under the same principles we apply elsewhere. This is unconscionable. It's made a thing quite clear that it's, I'm sorry. Ginsburg-Mills, there's nothing that indicates that the California courts are applying a different concept of unconscionability. You haven't come up and said, oh, look what they did here, and in another case they said it has to shock the conscience. Maybe across the board, California is saying, we think that unconscionability should have a broader meaning. Is it unfair to the weaker party to the bargain? Is there really no genuine agreement here? And if that is so, that will fit our definition of unconscionability. We don't have anything that says, California court hasn't said we are applying a special definition of unconscionability to arbitration agreements. Well, they haven't said that, Your Honor, but their opinion makes clear that they do. For example, the statute in California that defines unconscionability specifically says unconscionability shall be assessed at the time of contracting. Here, the decisions holding the Discover Bank rule is specifically based on a determination of unconscionability, not ex ante, when there would be a variety of situations to consider, but it's explicitly based at the time the dispute arose. So it's clear that they are applying a different rule. Kagan. I was under the impression, Mr. Pincus, that Discover Bank specifically cites a case which arose not in the arbitration context, but instead in the general litigation context, which is this America Online case, and thereby made clear that its rule, however different it may seem to you from normal contract provisions, its rule applied both in the arbitration sphere and in the litigation sphere. Pincus. Justice Kagan, I think that question goes to a separate question. I think Respondent has two arguments. One is, because this rule applies to all dispute resolution provisions, it is a general – it applies to any contract that qualifies under section 2. We think that that clearly can't be the case for several reasons. First of all, section 2 says any contract, and that, the Court has said, means principles that apply to contracts generally, not principles that are limited to disputes. Ginsburg. Any contract could have an arbitration clause. True, Your Honor, but if the provision meant that, then as long as a State law banning arbitration said we are banning arbitration in any contract, then the State could say it applied to any contract, or a provision that said juries are required to resolve every dispute whether it's arbitration or not. Ginsburg. One feature of this, you are not claiming that, vis-à-vis litigation, arbitration is being disfavored, which was the original concern about arbitration agreements and what prompted the Federal Arbitration Act. The courts didn't like to have that business taken away, and so they were disfavoring arbitration contracts. That's no part of the picture here, as far as I can see, because the rule is the same whether it's litigation or arbitration. Well, we do make an argument, Your Honor, that the impact of this rule is much more significant on arbitration than it is on litigation, because it basically, with respect to litigation, it is reaffirming the default rule, but with respect to arbitration it has a quite significant different effect, which is really to transform arbitration in the ways that the Court described in Stolt-Nielsen. And so we do argue that it does have a disproportionate burden, but our principal argument here is that any contract requirement means that the State law rule being applied has to be a rule that applies generally to contractual provisions. Scalia But some elements of unconscionability can only arise in a litigation or an arbitration context, such as requiring the complaining party to litigate or arbitrate at a distant location. How can that possibly apply to any other contracts? Well, that now turns to the second argument that Respondents make, which is even if the mere fact that it applies to litigation and arbitration satisfied Section 2, the rule satisfies Section 2 because it is merely a specific application of California's general unconscionability rule. And our response to that is, it is quite clear that three critical respects to the context. It is the principles that were applied, not the result, but the principles that were applied in order to find unconscionability here are different than the principles that are applied in every other context. My example is that the three are, first of all, looking to the effect on people other than the parties to the dispute. In every other case, the question is, is it fair to the person before the court to apply the contract to them? Here, the district court found it was quite fair to apply it to that person. The problem was third parties. Second issue, when is the unconscionability decision made? As I said, the statute says ex ante. Here, the decisions explicitly say we are going to look at it at the time the dispute arises. Third question, the general standard is shock the con so unfair as to shock the conscience. Here, the standard is, is there a deterrent effect equivalent to a judicial class action? Three critical differences, three differences that are not differences in result, but are differences in the legal principles that are being applied to determine unconscionability. Breyer, I thought that Discover Bank is the California case that sets it out, is that correct? Yes, Your Honor. So that's California law. And what they say in Discover Bank is they are talking about class waivers in both arbitration contracts and not arbitration contracts. And they say they are void when it's a consumer contract of adhesion, when it predictably involves small amounts of damages, when it is claimed that the party with the superior bargaining power has carried out a scheme deliberately to cheat large numbers of consumers out of individually small sums of money, and the waiver becomes in practice the exemption of the party from responsibility for its own fraud. Now, it seems to be, those seem to be the principles that apply. Those principles apply to litigation. They apply to arbitration. What's the problem? They don't say anything there about the things you mentioned. They just mention four things, which I just read. Well, and the only, as I said, there are two questions in this case, and I think it's helpful to keep them separate. One is, is it permissible, simply because the rule applies to both litigation and arbitration, is that sufficient to satisfy two? Breyer, No, I would guess it's like Switzerland having a law saying we only buy milk made by cows who are in pastures of higher than 9,000 feet. That discriminates against milk from the rest of the continent. But to say we want cows that have passed the tuberculin test doesn't. So I guess we have to look at the particular case. And here my impression is, correct me if I'm wrong, that class arbitration exists. It's not a — it's not like having a jury trial. You could have it in arbitration. You can have it in litigation. So where is the 9,000-foot cow or whatever it is? Where is the discrimination? Well, I think this is exactly the 9,000-foot meadow, Your Honor, because I think the problem here is there is — it is not possible, based on the language of section 2 or any other basis that we can think of, to say a statute that requires the full use of discovery procedures in court and in arbitration or factual determinations by a panel of six individuals selected at random. Ginsburg, Mr. Pinker, am I necessarily saying that? As I read it, the plaintiff brought a case to court, not to arbitration, and then there was a motion to stay, still court litigation. Why isn't it a proper reading of this case to say you want — if you're in the arbitration forum, it's bilateral, but you can't do these plaintiffs out of a class action. So if you don't have a class action in arbitration, you can have it in court. That is, the class action is preserved, not necessarily in the arbitration forum, but in the court. I think the problem, Justice Ginsburg, is both prongs of that requirement are independently problematic. I think for the reasons that I was just saying, and I think for the reasons that the Court explained in Stolt-Nielsen, requiring class arbitration is just the same as requiring discovery or a jury trial or all of the other judicial processes in arbitration. And if the alternative prong of that is to say, well, if you don't do that, you must exclude these claims from arbitration, it's independently problematic. Sotomayor, they're not saying you have to have arbitration, class actions in all arbitrations and proceedings. They're identifying a class of cases in which they perceive the State, whose own sovereign in the Savings Clause in the FAA, permits them in law or equity to set forth rules to say, in this subset of cases, there is a substantive right being offended. That's different than rules that are looking at procedures and setting uniform procedures in both. How do we draw the line between a law that says discovery has to happen in arbitration and one that says in a contract of adhesion, if the superior party retains the right to do discovery but tells the inferior party you can't, and a State says that's unconscionable? Your Honor, I think that's the precise difference between the two issues that are in this case. For the reasons we've been discussing, we think there's a very strong argument that a rule cannot qualify to be saved under Section 2 simply because it applies even-handedly to arbitration and litigation because of the fact that that would sweep in all of these other rules that we're talking about. And an additional reason to respond to Justice Breyer's question is that at the time that the FAA was enacted, the ouster doctrine did apply to arbitration and litigation. It was a broad doctrine in which courts said, we are going to invalidate any contractual provision that deprives us of jurisdiction, whether it directs the claim to arbitration or it directs the claim to some other court. And so the very same argument being made here could have been made there. Kagan in Mr. Bicus, I'm not understanding what test you're asking us to formulate. Justice Scalia started this by saying how about a provision prohibiting certain kinds of attorney's fees? How about a provision prohibiting certain kinds of a law prohibiting certain kinds of discovery provisions? And you said that would be fine for the State courts to hold those things unconscionable, but it's not fine for the State court to hold a class arbitration prohibition unconscionable. So what separates the two? How do we know when something is on one side of the line and something is on the other? Both procedures, but you say some are fine to say that those procedures are unconscionable, but other procedures, if you held them unconscionable, that would not be sufficient. What separates the two is, is the State, in the particular case in which the determination is made, applying principles that apply to across the to apply to its unconscionability doctrine across the board. The State says yes. The State says it absolutely is. Now, who are we to say that the State is wrong about that? Well, let me answer that in two ways, Justice Kagan. First of all, let me explain why the hypotheticals that you posit and that Justice Scalia posited and that Justice Sotomayor posited have been addressed under the traditional unconscionability doctrine that we describe. In all of those cases, what courts have said is this provision, we are measuring the fairness of the ---- whether it's unconscionable at the time of contracting. We are looking at the effect on the party before the court. Can this person get to arbitration? Is the fee too high? Is it too far away? What about we're looking at the effect on this particular person and we're deciding whether it shocks the conscience or whatever their across-the-board State standard is. And in all of those cases, that's what those courts do, and that's why those provisions have been invalidated, because they are invalidated under an even-handed application of the unconscionability provisions that courts apply when they assess. Alito, I don't want to interrupt your complete answer, but I thought that was the gist of your argument, the heart of your argument, that traditional unconscionability in California and elsewhere focuses on unfairness to the party who is before the tribunal. So here it would be unfairness to the Concepciones rather than unfairness to other members of the class who are not before the court. That's exactly right, Justice Alito. In fact, the State says, well, our unconscionability doctrine may not have done that in the past, but now in the year 2010, it actually applies to more things than it did in the past, and we do take into account third parties. And that's our new unconscionability doctrine. That may be a good unconscionability doctrine or it may be a bad unconscionability doctrine, but it's the State's unconscionability doctrine. But it is not the State's general unconscionability doctrine, Justice Kagan. It's a doctrine that applies only in the context of class waivers, and that's the problem. If the State were to adopt a general statute that said for unconscionability purposes henceforward, we will look in assessing the unconscionability of every provision at the third parties, at the impact on third parties and whether it's fair to them, perhaps they could do that. I think there might be some reasons why a State wouldn't do that, because that would offset a lot of things in the judicial system that we think of as routine, such as confidential settlements and the fact that arbitration doesn't require publication or estoppel, and all kinds of rules could be invalidated on that ground. But at least it would be an evenhanded rule that the State applied across the board, and it would also apply to things like the level of rent in rent contracts and statutes of limitations and all sorts of things. But here, that's not the case. Breyer. Why? That's, I think, what Justice Kagan is getting at. If a State wants to have a doctrine which says you have to have a seal of a certain kind on certain kinds of contracts, they've never done it before, but now they do it. And on that kind, you have to have a seal both on the arbitration contract and on the other. And here what they've done is they've listed the four characteristics from Discover Bank, and they've said all contracts to do with litigation have to satisfy those four, at which point, I think Justice Kagan said, so what if they've never done this before? They sure have done it now. And what's the basis for saying that the Arbitration Act or any other part of Federal law forbids California from doing that? Two answers to that, Justice Breyer. First of all, they haven't done it generally with respect to contracts. They have made up a special rule that is targeted on a special kind of contract and that carries to the extent one is worried about non-facial discrimination, designing the category of contracts relating to litigation or dispute resolution is precisely the kind of category that most presents the risk of discrimination that isn't facial. And again, whatever any contract means, we think it has to mean that the category of dispute resolution contracts can't be one that satisfies any contract, because at the time the law was enacted, the Ouster Doctrine did just that and it was the doctrine that was being targeted. Kennedy, but it seems to me that all State or most State statutes pertaining to contracts pertain to a class that's not entirely universal. Suppose the State had a statute referring to banks. Contracts with banks. That doesn't apply to all contracts because it doesn't apply to railroads. But we know that it applies to a class that generally includes both arbitration and non-arbitration, and that's this case, because there can be class action rules with respect to litigation and class action rules with respect to arbitration. So you have to have some rule that recognizes that you don't have to have the entire universe of contract. And I'm not quite sure what your test is. You have a few of them in your brief. Well, I think the any contract language of the statute shows that Congress was not enacting, was not providing that everything other than facial discrimination qualifies for the savings clause, because it could have said any nondiscriminatory rule. It said a rule that applies to any contract. And the reason for that, we think, is because of the Ouster Doctrine that it was confronted with, which did apply to both arbitration and litigation contracts, and because of the risk generally that a contract rule could be devised that maybe didn't facially discriminate against arbitration, but had the effect of targeting arbitration disproportionately, and that's what's going on here. Scalia. So how do you have special rules applicable to banks? Well, most, most. By banks. Can't a State say, you know, certain bank contracts have to have this or that? In most of the examples that we have looked at of situations like that, the contract principles that are being applied are general principles, and perhaps they are being applied, they are being specified for particular categories of contracts, like the UCC, but they are tied to general principles. They claim that here. They claim it's the general principle of unconscionability. But I think, as I've discussed, the problem here is it has the label unconscionability on it, but the test that is applied has nothing to do with the test that's applied in every other context. So it's an easy case to decide, going back to my statutory example, this is an unconscionability – this is a test that may have the label on it, but everything that the Court looks at to find unconscionability or to find this impermissible are things that are not looked at in the other context, and in the other context, indeed, as the district court said, this contract is more than fair under our general unconscionability standard, because the people before the Court are better off than they would be last  Sotomayor, we have to serve as reviewers of State law? We have to look at what the States are doing to interpret their own laws? I think what the Court has to do, as it does in the independent and adequate State ground context, in other contexts, is to determine whether the State is applying a rule that is – that discriminates, because the core protection of section 2 is discrimination. And so if the State has devised a rule that clearly discriminates, but has simply put the label of unconscionability, surely the FAA permits the Court to look at that, otherwise it's – the protection will be reduced to nothing. Ginsburg. So if we looked at California law and we find other instances of unconscionability that are applying a standard less stringent than shock to conscience, then we would say, okay. No, Your Honor. I think the critical question here, are there other cases that look to the effect on the party before the Court? We found none and Plaintiffs and Respondents have found none. Are there other cases that assess whether it's unconscionability at the time of the dispute rather than at the time of contracting? There are none. The statute specifically requires it to be done at the time of contracting. And are there cases that say we're going to look at whether something is not whether it's something as so unfair as to shock to conscience, but at whether it is the equivalent to some statutory procedure? There are none. And that's the problem. Like the record of the balance of my time. Roberts. Thank you, Mr. Pincus. Mr. Gupta. Mr. Chief Justice, and may it please the Court. As I think several of the questions this morning have brought out, the question here is not what this Court would decide if it were sitting as the Supreme Court of California and applying the State's common law in the first instance. Rather, the question is whether the State law at issue falls within a statutory savings clause that expressly preserves contract defenses available at law or in equity. The State law at issue here is not preempted for three reasons. First, it's consistent with the equal footing principle or nondiscrimination principle that this Court has consistently recognized is embodied in section 2. Second, it's consistent with two key purposes that the savings clause fulfills under the FAA, ensuring that arbitration is a matter of consent and not coercion, and that it represents merely a choice of forum, but not an exemption from the law. And third, the State law at issue is a correct and legitimate application of the State's common law to which this Court should defer. Roberts. If I could just go to your second reason, it seemed to be focused particularly on arbitration as opposed to a principle that applies to every other contract. Well, let me be clear about what I mean by the second reason. I think that the savings clause in the FAA serves two critical purposes, and that is that the contract law doctrines ensure consent. You don't have arbitration unless you have a consensual agreement between both parties and you look to State contract law to determine whether there is consent. And also, I think as this Court has repeatedly said about arbitration under the FAA, it represents a choice of forum, but it doesn't withdraw the parties from the substantive liability rules of the State. Roberts. A substantive State liability rule on the issue you're addressing is that you consider the issue of consent ex ante, and with respect to arbitration, they're considering it at the time the dispute arose. Isn't that a discrimination against arbitration agreements? Well, first of all, I think it is a question of State law whether the determination is ex ante or ex post. But we actually don't think that's true. Well, sure, that's true in all of these cases. It's a question of what the State law provides. Then you consider whether it's consistent with the Federal Arbitration Act. Right. And the Discover Bank application of State unconscionability law, we believe, is an ex ante analysis. It looks at whether the contract is fair or exculpatory at the time that the contract is made. And indeed, there's the two arguments that Mr. Pincus made about California unconscionability law are somewhere at war with themselves. He said that the doctrine looks to third parties and that that's illegitimate. And he said that the doctrine is ex post and that that's illegitimate. But in fact, from the perspective of a consumer that's entering into this contract, from the perspective of any AT&T consumer, they don't know whether they're going to be among the very few consumers who detect fraud, recognize a legal claim or hire a lawyer to do so, and come forward and seek compensation. And so the conceptions are situated just like any other AT&T customer, and that is the point at which fairness is assessed. So from the perspective of California unconscionability doctrine, the conceptions and all the other AT&T customers are not differently situated. It's not a question of whether the conceptions, once they've chosen to make a claim, whether the contract is then fair to them. It's whether it's fair to any AT&T customer. Roberts. What other area of contract law does the Court consider unconscionability not with respect to the parties before the Court, but with respect to third parties? Well, I think, first of all, the California State law is applying an exculpatory clause prohibition that has been on the books since 1872 in California. And if you look at the cases, many of which we've cited in our brief, they don't look to the parties before the Court rather than third parties. No. In fact, the California courts have developed a test that says we'll enforce exculpatory clauses, or what would otherwise be exculpatory clauses, if they don't have significant public effects. So the test under that statute is actually to look to the public effects, the effects of similarly situated people that are parties to the contract. And, for example, there was a case in the early 20th century under that statute where the question was whether a banking contract was unfair. And what the Court said is that the parties to the contract are not the only people that matter here. What matters is the interests of the banking public. Are there any? Roberts, it's a general rule of contract law that contracts contrary to public policy could be unenforceable. It seems to me that's quite different than saying we're worried about third parties that are in the same position as these particular parties. In other words, it's not simply adverse public consequences, but it's a different mode of analysis than I'm familiar with under basic contract law. Well, again, I want to try to explain why I don't think that the conceptions are any different from what Mr. Pincus is describing as third parties. At the time that they enter into the contract, the question is whether the contract ex ante is unconscionable as to them. And they're just like anyone else. They don't know whether they will detect this fraud and be able to come forward. And so the question is, is that unconscionable as to them? It's not looking only to the effects on third parties. But there is also an exculpatory clause prohibition that has always taken into account the effects on the public, and both of those are at work in Discover. Alito, maybe you can explain it this way. Compare what the conceptions have available to them under the contract with what going through the arbitration, all the procedures leading up to arbitration and arbitration against what they would get at best if this were allowed to proceed on a class basis. Why are they better off with a class adjudication? Because from an ex ante perspective, again, when they enter into the contract, they have — it's not reasonable to expect that they will be among the very few people who will recognize that there's fraud, recognize a legal claim, and come forward. And so from that perspective, it is not reasonable for them to give up the benefits that they would get from a class action. A class action incentivizes lawyers and others to detect for this fraud. It makes it economically justifiable to come forward with these kinds of claims. Alito, and isn't that what distinguishes this from the ordinary unconscionability analysis? If the district court correctly understood the way the AT&T mobility scheme works, and the district court said that under the revised arbitration provision, nearly all consumers who purchase the informal — who pursue, I'm sorry, the informal claims process are very likely to be compensated promptly and in full, et cetera, et cetera, if the district court understood that correctly, the scheme here is found to be unconscionable because it doesn't allow the enlistment of basically private attorneys general to enforce — to enforce the law. And isn't that quite different from ordinary unconscionability analysis? I don't think it is. I mean, obviously, it's impossible to come up with a precise analogy that's going to be on all fours, but in our case we cite — in our brief we cite cases involving unreasonably shortened statutes of limitations, where the California courts for over 100 years have found that those can be deemed unconscionable. And the principle is the same. Those kinds of clauses can interfere with a party's ability to have notice that they have a claim and take action on that claim. That kind of procedural limitation has always been deemed unconscionable. Kennedy, suppose that this didn't have what's called a blowout clause. Suppose that that kind of clause was not in there. And the consumer opts out of the arbitration. Arbitration doesn't go well anyway. Can the consumer then insist on the arbitration that the consumer bargained for? The individual arbitration that the consumer bargained for? Well, under this clause, the consumer will always have the ability to proceed on bilateral — on a bilateral basis. So then the bank has to have liability for — exposure for two different proceedings? Well, that's — I mean, that's true anyway, right? The mine run of consumer claims — But you're saying that then California can say it's unconscionable to allow the parties to agree that there will be just the single arbitration proceedings. I don't see how the third parties are necessarily protected. If you say that the consumer still has the election, that certainly isn't what they bargained for. Maybe that's just a quarrel with the content of the unconscionability standard rather than FAA, but I think it does bear on at least section 4 of the FAA. And maybe I'm misunderstanding your question, but I think, you know, that's true of any of the procedural limitations that Petitioners concede would be subject to the unconscionability doctrine. A person would still be free to proceed under a basis that would otherwise be unconscionable. For example, if you had an arbitration clause that limited important remedies, it banned punitive damages, injunctive relief, insisted on a distant forum, required excessive fees, those would be unconscionable as a matter of State contract law, or could be anyway, but the consumer would still have the ability to proceed on that basis. Sotomayor's question is, how would you propose to distinguish between facially neutral contract law defenses that implicitly discriminate against arbitration and those that do not? What's the test you would use to tell the difference between the two? Because obviously, there are subterfuges that some legal systems could use to address themselves just to arbitration. So how do we tell the difference? Gannon. We don't deny that's true, but it's not that different from the way this Court approaches State law in general. You start from a position of deference. The Court says this is facially nondiscriminatory law, it's generally applicable, but there's a limit on that. If the State law is — if the State is engaging in obvious subterfuge to deny Federally protected rights, this Court has always said that there's a limit. Sotomayor's question is, how do we test it? I mean, other than — I don't want to look through legislative history and determine whether some committee person said something that sounds like subterfuge. How do I look at the law and its effects and determine that subterfuge or that discrimination? I think in the first instance, it would be an objective determination. You would see whether the State court is telling the truth. Is this law really being applied in the same way in the arbitration context and outside of the arbitration context? And here we know, because as Justice Kagan said, the first California appellate case on point is a case outside of the arbitration context, the America Online case. The Discover Bank case relied on that case when it struck down a class action ban in the arbitration context. Your brother says that the — Scalia, where do you get obvious subterfuge in the Federal Arbitration Act? That's not in the Federal Arbitration Act, Your Honor, but in the Mulaney v. Wilbur case and other cases where the Court is describing the limits on deference to State law, those are the kinds of standards the Court has used. If it's not a credible rule of State law, if the State is not really doing what it's saying and the result is the deprivation of Federally protected rights, this Court has always said that there's a limit on deference to State law. Now, it's a — Roberts, in the independent and adequate State ground context, which strikes me as quite different, we have a statute here that says the arbitration agreements have to be treated like any other contract, any contract. I don't see how that's the same as obvious subterfuge. Well, I'm addressing, Justice Sotomayor's question, if I understand it, it's when you have a facially nondiscriminatory rule of contract law, where when you look at the face of the opinion, nothing suggests it's nondiscriminatory. And the question is, how do you tell whether the State court is not telling the truth? And I think in that circumstance, you'd have to — I can't think of any other way you would do the analysis. Well, you have to do it. You'd have to do it differently, because they might be telling the truth. The example that your brother lawyer gave is this, that we have a State and the State says if you have a contract in the dispute resolution provision, whether you have arbitration or not, that provision is void if it says you won't have a judge. And it's void if it says you won't have a jury. And it's void if it says that you will not go to the United States courthouse for deciding all Federal claims. That applies whether there's an arbitration clause or not an arbitration clause. Now, that would seem to me, no subterfuge, it is absolutely clear, they're not lying. It just happens to prevent arbitration. And he says that's absolutely true of this one, that once you get into class actions, you will discover you have something that really looks like a court case. You have to have discovery, you have dozens of lawyers involved, you have depositions, you're running off every 5 minutes to the judge or to somebody to say, is this deposition good, bad, or indifferent, you have methods for enforcing the deposition, you have all kinds of things. He can make a much bigger list than me. So he says this case is like the case of California saying everybody can decide it any way they want as long as they do it before a Federal judge.  Now, what's your answer to that? Clements, Obviously, we concede that those kinds of rules are preempted. But your answer to his specific effort to assimilate the issue in this case, which is the class action, to the made-up issue, which you concede, is a discrimination. I think there are two limiting principles in addition to the discrimination inquiry. If discrimination doesn't get you there, you can then ask, is the rule tantamount to a rule of non-enforceability of arbitration agreements? So, for example, if a State law says you cannot waive the right to a public jury trial, now, obviously, that renders all arbitration agreements unenforceable. It contradicts the general rule of enforceability. To read the Savings Clause to allow a rule like that would be to read the rule. Breyer, what about a rule that says what you have to have in any contract is a rule that all the rules of the Federal civil procedure apply to discovery, not necessarily in a courtroom, but you have to follow exactly those procedures? I think that would bring into play the second limiting principle, because parties could contract, obviously, to agree to certain procedural rules like that. But I think that that would bring into play a principle of obstacle preemption. Okay. Now, why isn't this obstacle preemption? Right. I think the one of the purposes, we agree with Petitioners about this, one of the purposes of the Federal Arbitration Act is to allow parties to contract for procedures, to tailor their procedures, and in general, the courts ought not to be interfering with those kinds of consensual decisions. But there are two other important purposes at play, and no statute pursues its purposes at all costs. One of those purposes is to ensure that there is not coercion, that you have a consensual agreement, and another, just as important, is to ensure that arbitration merely represents a change of forum, but isn't an exemption from the law. And so that's, I think, that's at work in the examples that Petitioner concedes. Ginsburg. Mr. Gupta, I'd like you to focus on Stolt-Nielsen. In Stolt-Nielsen, this Court said that absent express consent, no class arbitration. If the seller or employer, whoever it is, doesn't want class arbitration, doesn't have to have it. And here, that's surely the case. The ATT has not consented to class arbitration. Then California law says, well, that's okay, then you'll be subject to a class action suit in court, but the very purpose of the arbitration agreement was it would be in arbitration and not in a court. So why isn't Stolt-Nielsen dispositive of this case? I think Stolt-Nielsen is properly read as the question there was a question of contract interpretation. The question here is whether the agreement is valid in the first place, whether you have a contract. What Stolt-Nielsen tells you is that you cannot impose class arbitration on an unwilling defendant. Ginsburg. Well, here you have an unwilling defendant who doesn't want class arbitration. Well, the defendant here has specified in its arbitration agreement that if the class action ban is invalidated, it would prefer to face any class-wide proceedings in court. And that choice is up to the defendant. If the defendant chose to face class-wide proceedings in arbitration, they could do so under the California rule, or they could elect to do so in court. And they could do so under whatever procedures they specified in the agreement or that were specified in a subsequent agreement between the parties. California law doesn't impose any particular procedures on the party. It just insists that in circumstances where the ban would function as an exculpatory clause, that there is some avenue for class-wide proceedings where claims wouldn't feasibly be litigated individually. I don't think that the literature would have recognized that. Kagan Mr. Gupta, AT&T says that nobody would ever choose class arbitration. It's the worst of both worlds. You get all the procedures, you get broad liability, but at the same time you have no judicial review. So this will effectively kill off arbitration in the consumer context. I think one answer to that is that some parties have chosen class arbitration and we cite some examples in the brief. There have also been hundreds of class arbitrations conducted by the American Arbitration Association, the leading arbitration association. Class arbitration has existed for a quarter century, so it's not something that's foreign to arbitration. But also, I just refer back to what I said to Justice Ginsburg, which is that this is a matter of consent. Nobody is forcing defendants to face class arbitration and nobody is forcing them to face it on terms that they haven't consented to. So if there are concerns about the ability of class arbitration to effectively manage the process, they can be tailored by the parties. And in fact, there are even hybrid procedures where Scalia The question is not whether they're being forced to accept class arbitration, it's whether they're being coerced into abandoning regular arbitration. That's really the issue. I mean, one could say the same thing about many of the procedural limitations that both parties agree are subject to the unconscionability doctrine. If a defendant said, well, we don't want to face arbitration unless we can ban punitive damages or other important remedies, unless we can insist on certain kinds of discovery limitations that the State courts deem unconscionable because they don't allow the parties to vindicate their rights individually, the same argument would hold true. The defendant would be able to say, well, that's, you know, if we can't have arbitration on our terms, we won't have arbitration at all. That's not what the Federal Arbitration Act says. The Federal Arbitration Act puts arbitration agreements on equal footing with other contracts. It forbids States from discriminating against arbitration, but it doesn't require them to remove all impediments that a party may wish to remove to have arbitration on their terms, even where it would effectively exculpate. Scalia Sure, as long as those impediments are removed on an equal footing with all contracts. That's right. That's right, Your Honor. And I think, you know, we concede that if the California courts were discriminating against arbitration agreements, if they were applying one rule to class action bans or other kinds of procedural limitations in arbitration, and another outside of arbitration, that would not fall within the Savings Clause. Alito Well, can I take you back to a question that was asked a few minutes ago, because I'm not sure, excuse me, I understood your answer. What is the difference between a State rule that says that the rules of civil procedure must be followed in any adjudication and a rule that says that class adjudication must always be available? I think in the first instance, I don't think that — I'm assuming that you're describing a rule that purports to apply general contract law, let's say unconscionability. I don't think — I think it would be hard for a State to credibly claim that the absence of the Federal rules of civil procedure systematically exculpate one party from liability. That just doesn't happen. Alito No, I'm not putting this under an unconscionability label. These are just general rules, and the question is whether they can be applied, whether they constitute discrimination against arbitration. Well, whether or not they constitute discrimination against arbitration, I think your first hypothetical would be preempted, because a State could not credibly be serving the purposes that the Savings Clause serves in insisting on the Federal rules of civil procedure. Alito Why? Because I don't think that a credible argument can be made that that systematically serves and functions as an exculpatory clause. There are going to be questions of degree here, but take, for example, discovery. I think that both parties would agree that if an employer said, I get discovery and you, the employee, don't get discovery for your fact-bound discrimination agreement. Alito No, but I really would appreciate it if you would answer my hypothetical, the one that was posed before. What is the difference, let me change it slightly, between a rule that says you must follow the rules of evidence in every adjudication and a rule that says that class adjudication must always be available? I think your answer comes down to the proposition that the former is inconsistent with the idea of arbitration, and therefore that's why it's not allowed, and the latter is not inconsistent with the idea of arbitration, and therefore it is allowed. Is that correct or not? No, I think the better way to analyze that is under the rubric of obstacle preemption, because there are important purposes that are served by the Savings Clause in invalidating certain procedural restrictions that have an exculpatory effect, a substantively unfair effect, but at the same time, the act to be able to function has to allow parties to contract the procedure. Alito With the California rules of evidence is an obstacle to arbitration, but allowing or insisting on the availability of class adjudication is not an obstacle to arbitration. But in the end, we have to make a value judgment about whether these things, one thing or the other, fits with arbitration. That's what it comes down to. No, I think that's not right. I mean, I think in the first instance you defer to what the State court says it is doing. And what the State says it is doing, and there's no reason to doubt this, is that it is preventing a procedural limitation that systematically favors one party, tilts the playing field to the degree that parties cannot feasibly vindicate their claims through arbitration. Alito And when it imposes the rule that the rules of evidence apply across the board, it says it's – it feels that these are necessary in order for parties to be treated fairly in every method of adjudication. Right. I mean, obviously, the application of the Federal rules of evidence don't have a systematic effect that favors one party or the other. And so I think a rule like that would not be credible. And I'm trying to answer your hypothetical, but I do think that the discovery of the rule of evidence is not credible. Breyer Where do we look to find the answer? I mean, I understand your answer and I know the other side is going to say, well, this is a tremendous obstacle. If I have one person to deal with, I say, you want your $75, I'll offer you $75. And if you don't take it and I turn out to be wrong, I'm going to give you $7,500. That's their system. All right? So they say the alternative is class action. There are a million customers I've faced with a claim for $75 million. I can't afford that. I'll settle it, even if I'm right. And so if you have your rule, I'm going to be facing these things all the time. I'm not going to enter into arbitration agreements. I'll take my chances in court. Okay? Now, that's their argument. So it's empirical in part. What do I look to? It's not logic. It's a question of where should I – what should I read to show, in your opinion, you're right? I think you have to look first at what the State law is trying to do. And the hypotheticals about the insistence on jury trials, insistence on Federal rules of evidence or civil procedure, those are clear – it just would not be credible for a State, I think, to say that those things are required. Is your test a purpose test or an effects test? Is it a test that says the State is doing this in order to kill arbitration, or is it a test that says the State is doing something that will kill arbitration? I think you can look to both. I think you would have to look to both. I mean, it would pose an obstacle to the statute whether the State was doing something antithetical to the purposes of the statute or whether it would have the effect of destroying arbitration. In either case, those things would be preempted. But all of these hypotheticals describe rules that don't exist under any State's laws and are unlikely to exist, because they can't – they wouldn't really be able to be reconciled with traditional notions of contract law. And then you really would have obvious subterfuge. You really would have a rule that is not true State law. But I think if you look, for example, at discovery, I think a State could not insist on plenary discovery, full discovery to the same degree available in courts, but a State can certainly insist on invalidating one-sided discovery limitations. A State could certainly say that someone who seeks to vindicate a fact-bound employment discrimination claim has to have some opportunity to develop the facts. Otherwise, that is exculpatory. Kennedy, if you stick with the theory that the test is whether or not the law in question is inconsistent with the idea of arbitration, whose idea of arbitration? What about, suppose it's the bank's idea of arbitration, that we want this settlement to be, we do not want that? That's the bank's idea of arbitration that the parties agreed on. Right. I think you're right, Justice Kennedy, and I think the difficulty of ascertaining what is sort of at the essential core of arbitration means that the test of what's tantamount to a rule of non-enforceability is going to be, it's going to be a very small category. It's going to describe the ouster doctrine, the jury trial waiver prohibition. And I think that's why you've got to resort to some principle of obstacle preemption to figure out whether the State is legitimately fulfilling the purposes, the important purposes, that the Savings Clause serves, or whether it's just insisting on full-scale procedures for the sake of it in ways that have nothing to do with the State leasing its own marketplace, protecting its substantive rules of liability, and ensuring that parties can adequately vindicate their claims. And if the State is doing that, I think that kind of rule would be preemptive. Scalia, I find it difficult to regard as voiding exculpatory contracts. I mean, yes, contracts which say I'm not liable even though I've committed a wrong, that's exculpatory. But the State here says you have to not only be liable for any faults that the other party to this contract discovers, but the other party to this contract has to be able to benefit from whatever faults anybody else in the world might find and bring a class action lawsuit. That goes well beyond forbidding exculpatory provisions. Well, with respect, Justice Scalia, that is not the rule of law that the State has announced. The State has made a judgment that if you preclude class-wide relief, that will mean that will gut the State's substantive consumer protection laws, because people will, in the context of small frauds, not be able to bring those cases. Thank you. Roberts. Thank you, counsel. Mr. Pincus, you have 4 minutes remaining. Thank you, Mr. Chief Justice. Although we believe we win under the principle of obstacle preemption that was just being discussed for the reasons that were enunciated in Stolt-Nielsen, we think there's a much easier way for the Court to decide this case. Congress, when it wrote section 2, used the phrase, any contract, and it clearly did that for a reason, and the reason was it wasn't – it recognized, as Justice Sotomayor said, that there could be attempts through nondiscriminatory provisions to injure arbitration. And the protection Congress adopted was a prophylactic rule. It said if the State law ruled that the State is trying to apply to an arbitration clause applies broadly to a large set of clauses, that's the best protection against discrimination, and that's why the any contract language is there. And so in answer to your question, Justice Sotomayor, about where to look for, for what any contract means, we think it means very broad, and the Court has said that. And the doctrines that the Court has identified as qualifying, duress, fraud, and unconscionability, are doctrines that apply broadly across the entire range of contract. But one thing that's very clear, we think, is that it can't mean, any contract can't mean any dispute resolution contract, because that is the gerrymandered category that most presents the risk of discrimination. And if the Court holds that that category is impermissible to justify a rule, it deals with all of the hypotheticals that are being discussed, because they are all jury waivers, discovery, evidence, those are all rules that, as the Court has propagated the hypotheticals, are rules that apply to all dispute resolution clauses, and they are focused on dispute resolution clauses. So we think that disposes of the argument that Discover Bank can be applied simply because it applies to litigation contracts and arbitration contracts. The next question is Respondent's second argument, which is, okay, if that's not a reason it falls within the Savings Clause, it falls within the Savings Clause because it's simply an application of California's general unconscionability doctrine. And that is where we turn to the issues that I was discussing in the first part of the argument with the Court, which is it isn't because in the three particulars that I listed, it is clearly a totally different legal rule that simply has the unconscionability label on it. And just to drill down on my colleague's discussion that this was really an ex ante analysis, it couldn't be an ex ante analysis, because that would have to take into account that the vast majority of claims that anyone will ever have under a contract are nonclassable claims. And as to nonclassable claims, it's clear that the arbitration process is infinitely better than the court process, because for most small consumer claims there is no real court process. And so if one is going to make an ex ante assessment of the fairness to the parties before the court, it wouldn't just be about classable claims. It would have to include nonclassable claims. And as to those claims, it's clear that there is a tremendous benefit to those people from the Arbitration Clause. With respect to exculpation, my friend referred to the California rule that the contract has to have a public effect. That is not about effects on third parties. In the Tunkel case, which is a California Supreme Court case that we cite, the Court makes clear that it's looking for contracts that — in which public services are being performed and that are otherwise imbued with a public interest. It's not looking at all at the effects on third parties. Finally, my colleague spoke about lots of class arbitrations. To our knowledge, all of those class arbitrations were arbitrations that were conducted before this Court's decision in Stolt-Nielsen, where a party had a silent agreement and, therefore, it was held by some lower courts to mean that class arbitration was permissible. We're not aware, as we say in our brief, of any contract that explicitly permits class arbitrations for the reasons that the Court discussed. It's not — just not something that makes any sense. Thank you. Roberts. Roberts.